# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICK MURRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15 C 6801 |
| ) | |
| AIG PRIVATE CLIENT GROUP F/K/A ) | Judge Rebecca R. Pallmeyer |
| CHARTIS PRIVATE CLIENT GROUP, ) | |
| _____ ) | |
| ) | |
| AIG PROPERTY CASUALTY COMPANY, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PATRICK MURRAY, ) | |
| ) | |
| Counter-Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Murray was injured in a car accident on September 28, 2011 while driving a vehicle owned by Michele Kelly. He incurred at least $180,090.96 in medical bills and recovered $285,000 from two other insurance companies. Murray filed suit in Illinois state court seeking to compel a third—AIG Property Casualty Company ("APCC")—to arbitrate a claim under Kelly's insurance policy. He also seeks attorney's fees and penalties for APCC's "vexatious and unreasonable" refusal to settle his claim. APCC removed the case to this court, where it filed a counterclaim [8], seeking a declaratory judgment that Murray is not covered by the policy. APCC has also moved for judgment on the pleadings [15]. Murray counters that the doctrine of equitable estoppel bars APCC from denying coverage, citing communications from APCC that allegedly led him to believe he was covered. He also filed an amended complaint [24], which adds the estoppel claim to his initial allegations. For the reasons stated below, APCC's motion for judgment on the pleadings is granted.

## BACKGROUND

While driving through Woodridge, Illinois on the Stevenson Expressway on September 28, 2011, Plaintiff Patrick Murray was rear-ended by another car. (Am. Compl. [24] at 2 ¶¶ 4–5.) At the time, Murray was behind the wheel of a 2002 Ford Explorer, which he had borrowed from its owner, Michele Kelly. (*Id.* ¶¶ 3–4.) Murray incurred more than $180,090.96 in medical bills as a result of injuries he suffered from the accident. (Medical Provider Table, Ex. B to Am. Compl.) He collected $100,000 from an insurance policy covering the tortfeasor who crashed into him (the "tortfeasor"), the maximum allowed under that policy. (Am. Compl. at 2 ¶ 7.) Murray also accepted a settlement offer from an underinsured motorist policy ("UIM policy") owned by Michele Kelly. That policy provided coverage for up to $300,000 per person. Plaintiff accepted an offer of $185,000 in December 2014. (*Id.* at 2 ¶¶ 8–9.) At the time of the crash, Kelly and her husband, Kevin, also owned a Personal Excess Liability Policy ("the Policy") through APCC (formerly known as "Chartis Private Client Group") on another vehicle they owned, which provided coverage for uninsured or underinsured or motorist claims of up to $1,000,000. (Ex. A to Am. Compl. [1-2]) at 2.) Murray now seeks payment from that policy.

Murray first sought to arbitrate his claim against APCC in November 2012, pursuant to the terms of the Policy. APCC refused. (Am. Compl. at 3 ¶ 10; Resp. [21] at 3.) More than two years later, in December 2014, Murray issued a "final, formal demand to settle this matter" for $185,000. (Letter from Hemsworth to Monahan of Dec. 11, 2014, Ex. E to Am Compl.) When APCC again declined to meet Murray's demands, he filed suit in the Circuit Court of Will County, seeking (1) an order to compel arbitration and (2) an award of attorney's fees for APCC's "vexatious and unreasonable" actions in "failing to arbitrate and settle this claim," pursuant to 215 ILCS 5/155. (Compl. at 4 ¶ 14.)

APCC removed the case to federal court [1] on the basis of diversity jurisdiction[1] and filed a counterclaim, seeking a declaration that Murray is not covered by the Policy. In the alternative, APCC seeks a finding that its obligation to indemnify Murray is limited only to those financial losses not already compensated by other insurance policies. (Counterclaim [8] ¶¶ 28, 36.) APCC has also filed a motion for a judgment on the pleadings [15], pursuant to Federal Rule of Civil Procedure 12(c), arguing that that the Policy does not cover Murray. In response, Murray counters that APCC is estopped from denying coverage based on "misrepresentations" it made in letters to Murray, which he claims indicated that he was covered. (Resp. at 4.) Murray has filed an amended complaint [24], adding this equitable estoppel argument as a separate count. (Am. Compl. at 4-6.)

## **DISCUSSION**

APCC moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Murray was not covered by the Policy from which he seeks to recover. A Rule 12(c) motion is reviewed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). In ruling on a Rule 12(c) motion, the court considers only the pleadings submitted by the parties, including the complaint, the answer and any attached exhibits. *Housing Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004); *see also* FED. R. CIV. P. 12(c). The court may grant a Rule 12(c) motion "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (internal citations omitted). In reaching its decision, the court draws all reasonable inferences in the non-moving party's favor. *Id.*

---

[1] The circumstances of this case satisfy the requirements of 8 U.S.C. § 1332(a): Plaintiff resides in Illinois; APCC is incorporated in Pennsylvania and has its principal place of business in New York; and Murray seeks to recover more than $75,000.

**I.     Murray Was Not an "Insured Person" Under the Policy**

The court turns, first, to the issue of whether Murray was an "insured person" at the time of the crash before addressing his equitable estoppel argument. The interpretation of an insurance policy is a matter of state law. *Westfield Ins. Co. v. Vandenberg*, 769 F.3d 773, 777 (7th Cir. 2015) (citing *Koransky, Bouwer & Poracky P.C. v. Bar Plan Mutual Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013)). As the parties agree that Illinois law applies, the court looks to the decisions of that state's courts for guidance. *Id.*

A cursory reading of the Policy reveals that Murray falls outside of its coverage. The Policy provides an "insured person" with coverage of up to $1,000,000 for an uninsured or underinsured motorist claim for a single vehicle: the Kellys' 2005 Toyota Sienna. (Personal Excess Liability Policy, Ex. A to Am. Compl. at 4.) The Policy defines an "insured person" as "(a) [The policy holder] or a family member, (b) An additional insured named in the policy, or (c) Any person given permission by you or a family member to use a vehicle or watercraft covered under this policy." (*Id.* at 10.) Although Murray was driving Michele Kelly's 2002 Ford Explorer with her permission at the time of the crash, that vehicle is not covered by the Policy. The court concludes that Murray was not an "insured person" under the Policy.

**II.    Equitable Estoppel Does Not Apply in This Case**

Murray does not offer a different interpretation of the insurance contract, but he contends that APCC is equitably estopped[2] from claiming that he is not an "insured person" because correspondence between APCC and Murray led him to believe that the opposite was true. (Resp. at 5.) But Murray's claim cannot prevail because, under Illinois law, "[e]stoppel cannot

---

[2] In his response to APCC's motion for judgment on the pleadings, Murray states that he "may state a claim for fraudulent inducement." (Resp. at 6.) As APCC notes, however, Murray has not made such a claim, even in his amended complaint. But even if Murray did raise such a claim, it would likely be dogged by the same shortcomings that doom his equitable estoppel claim.

be utilized in order to create coverage if none existed otherwise." *Ismie Mut. Ins. Co. v. Michaelis Jackson & Assocs., LLC*, 397 Ill. App. 3d 964, 974, 921 N.E.2d 1156, 1166 (Ill. App. Ct. 5th Dist. 2009) (citing *Nationwide Mut. Ins. Co. v. Filos*, 285 Ill. App. 3d 528, 534, 673 N.E.2d 1099, 1103 (1996)). "The rationale for [this] rule is that an insurance company should not be made to pay for a loss for which it has not charged a premium." *Filos*, 285 Ill. App. 3d at 534, 673 N.E.2d at 1103. That rationale, and the rule that follows from it, applies here.

The court notes, however, that even absent this limitation, Murray's claim would not prevail under the doctrine of equitable estoppel. To succeed, Murray has the burden of proving the following elements by clear and convincing evidence:

> (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.

*Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001), *see also Levin v. Grecian*, 974 F. Supp. 2d 1114, 1133 (N.D. Ill. 2013).

Murray argues that APCC misrepresented material facts in two messages sent by its attorney, Michael Murphy, to Willard Hemsworth, the attorney representing Murray. First, Murray cites to the following excerpt from a letter dated August 20, 2013:

> [APCC] does not intend to pursue a subrogation action against the tortfeasor. . . . Also, it is my understanding that you will now be seeking recovery from your client's UIM carrier before proceeding against [APCC]. If you disagree with anything that I have stated please advise.

(Letter from Murphy to Hemsworth of Aug. 20, 2013, Ex. C to Am. Compl. at 1.)

Next, he takes note of the following e-mail sent on January 13, 2015:

> I spoke to [APCC] regarding this claim and that [sic] they asked for some clarifications. First, however, they do not intend to subrogate/step in regarding

5

the insured's USAA policy. As for clarifications, they request your basis for accepting $185,000 of the $300,000 UIM benefit of the USAA policy. If there is a provision for a set-off, etc., please provide me with that information. Even if there is a provision for a set-off, you have not exhausted the underlying UIM limit of the USAA policy, so our policy would not come into play. Please provide any authority for your position so we can review and move forward.

(E-mail from Murphy to Hemsworth of Jan. 13, 2015, Ex. D to Am. Compl.)

These statements do not rise to the level of misrepresentations[3], nor could Murray have reasonably relied on them in deciding how to resolve his other insurance claims. First, regarding the tortfeasor's policy, the $100,000 that Murray received was that policy's maximum coverage. Murray could not have sought more regardless of APCC's actions.

Second, Murray's December 2014 settlement regarding the UIM Policy predates the January 2015 letter from Murphy to Hemsworth. That leaves only the August 2013 letter as a possible source of Murray's reliance. Although APCC does not explicitly disclaim coverage in that letter, nothing contained therein can be reasonably read as either an admission or an implication of coverage. To the contrary, the letter indicates that APCC would not pursue a subrogation action against the tortfeasor and it refers to Murray's claim against APCC in adversarial terms. (Ex. C to Am. Compl. ("Also, it is my understanding that you will now be seeking *recovery from* your client's UIM carrier before proceeding *against* my carrier." (emphasis added)).) Furthermore, the fact that APCC had declined arbitration on Murray's claim in 2012, strongly suggested that it disputed coverage.

Even drawing all reasonable inferences in Murray's favor, he has failed to establish the elements necessary to invoke the doctrine of equitable estoppel. More specifically, he has failed to show that APCC misrepresented any material facts or that he reasonably relied on

---

[3] In this context, a misrepresentation "need not be fraudulent in the strict legal sense or done with an intent to mislead or deceive." *In re Scarlett Z.-D.*, 390 Ill. Dec. 123, 132, 28 N.E.3d 776, 785 (Ill. 2015). "The test is whether, considering all the circumstances, conscience and the duty of honest dealing should deny one the right to repudiate the consequences of his or her representations or conduct." *Id.*

anything that APCC said to him in settling his claims related to the other insurance policies involved here. *See Pack v. Santa Fe Park Enterprises*, 209 Ill. App. 3d 648, 653, 568 N.E.2d 360, 363 (Ill. App. Ct. 1st Dist. 1991) (finding that equitable estoppel did not apply because plaintiff neglected to seek information). On the facts presented here, Murray could not have reasonably concluded that APCC had acknowledged that he was covered under the Policy.

**II.   Murray's Claim for Attorney's Fees is Meritless**

Finally, Murray seeks to recover "attorney's fees and other remedies" under 215 ILCS 5/155 because APCC has been "vexatious and unreasonable" in failing to arbitrate and settle his claim. (Am. Compl. at 4 ¶ 14(B).) Remedies under 215 ILCS 5/155 are available only to a party who is insured, or the party's assignee. *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 397 Ill. App. 3d 410, 426, 920 N.E.2d 611, 625 (Ill. App. Ct. 1st Dist. 2009); *see also Roppo v. Travelers Co.*, 100 F. Supp. 3d 636, 652 (N.D. Ill. 2015) (under appeal) (dismissing a state-law claim for remedies under Section 155 because the party seeking remedies was not an insured under the policy). As the court has determined that Murray is not insured under the Policy, he cannot prevail on this claim.

## **CONCLUSION**

For the foregoing reasons, APCC's motion for judgment on the pleadings [15] is granted without prejudice. Plaintiff is granted leave to file a second amended complaint within 21 days.

ENTER:

Dated: February 11, 2016

_____
REBECCA R. PALLMEYER
United States District Judge